Jerry **BURRELL**, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (PHILADELPHIA GAS WORKS AND COMPSERVICES, INC.), Respondents.**

**Philadelphia Gas Works and CompServices, Inc., Petitioners**

v.

**Workers' Compensation Appeal Board (Burrell), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 27, 2004.

Decided May 18, 2004.

implicit assessment of the anticipated impact on air quality and human health.

Robert A. Sloan, Philadelphia, for petitioner.

Joseph A. Prim, Jr., Philadelphia, for respondents.

BEFORE: COLINS, President Judge and SIMPSON, Judge and JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

Cross-appeals from the order of the Workers' Compensation Appeal Board (Board) affirming modification under the Pennsylvania Workers' Compensation Act (Act)[1] raise issues of imputed income. We affirm.

Claimant, Jerry Burrell, was employed as a compressor operator. Between December 1997 and June 1998, he sustained two groin injuries caused by work-related lifting. By agreement, Claimant received workers' compensation benefits.

Employer, Philadelphia Gas Works and CompServices, Inc., filed various petitions seeking to end or limit benefits.[2] During

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. 1–1041.1; 2501–2626.

2. Employer filed two termination petitions and a modification petition. The termination petitions averred that Claimant fully recovered from the December 1997 and June 1998 work injuries. In addition to Employer's petitions, Claimant filed a "petition for review of utilization review determination." Claimant asserted particular medical treatments for

the litigation before the Workers' Compensation Judge (WCJ), Employer obtained a videotape depicting Claimant at work in a shoe shine shop. The video showed Claimant, attired in a work apron, shining and buffing shoes, and running a cash register.

Claimant later testified he worked at his mother's shoe shine shop for 8–10 hours per week. He asserted that he received no pay and that he did not keep gratuities. Reproduced Record (R.R.) at 47–48.

Employer sought modification because Claimant returned to work. In support, it presented the deposition testimony of James H. Earhart, an independent consultant working as a coordinator for the vocational program at CompServices, Inc. (Vocational Expert). Vocational Expert, relying on the Dictionary of Occupational Titles handbook for analyzing jobs and on occupational employment statistics, opined that the average hourly wage for a shoe shiner in Philadelphia is $9.93 per hour.

The WCJ accepted Employer's evidence and ordered modification. He determined Claimant was working in the shoe shine shop with an imputed earning capacity of $9.93 per hour for eight hours per week.[3] WCJ Op. at 10. Both parties appealed to the Board, which affirmed.

The parties cross-petition for review of the Board's order.[4] Claimant assigns error in modification because Employer failed to comply with statutory prerequisites in Section 306(b) of the Act, 77 P.S. § 512,[5] and because the decision is not supported by substantial evidence. Em-

ployer argues the Board erred by declining to grant a credit.

### I.

Claimant assigns error in modifying benefits because Employer failed to comply with the statutory prerequisites in Section 306(b) of the Act. Specifically, Claimant argues Employer failed to comply with two requirements. First, he asserts Employer failed to provide him with a "notice of ability to return to work" pursuant to Section 306(b)(3), 77 P.S. § 512(3). Second, Claimant asserts Employer failed to prove it had no position available within his limitations pursuant to Section 306(b)(2), 77 P.S. § 512(2). Claimant also questions whether substantial evidence supports findings of earning power.

■ As to the first assertion, Section 306(b)(3) provides (with emphasis added):

(3) If the insurer *receives medical evidence* that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:

(i) The nature of the employe's physical condition or change of condition.

(ii) That the employe has an obligation to look for available employment.

(iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.

---

his groin, disputed by Employer, were reasonable and necessary.

3. Finding Claimant's disability continued, the WCJ denied Employer's termination petitions. Further, the WCJ granted Claimant's petition for review of utilization review determination, concluding the Claimant's medical treatment was reasonable and necessary.

4. This Court's review of a Board decision is limited to determining whether an error of

law was committed, findings of fact are supported by substantial evidence or constitutional rights were violated. Administrative Agency Law, 2 Pa.C.S. § 704; *Johnson v. Workers' Comp. Appeal Bd. (Abington Mem'l Hosp.)*, 816 A.2d 1262 (Pa.Cmwlth.2003).

5. Act of June 24, 1996, P.L. 350, No. 57 § 4, 77 P.S. § 512.

(iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

■■■ Workers' compensation benefits "may be modified or suspended, based upon an imputed earning capacity, where a claimant has returned to substantial gainful employment."[6] *Summit Trailer Sales v. Workers' Comp. Appeal Bd. (Weikel),* 795 A.2d 1082, 1086 (Pa.Cmwlth.2002). Surveillance evidence and vocational testimony may be utilized to establish earning power of a working claimant. *See Trimmer v. Workers' Comp. Appeal Bd. (Monaghan Township),* 728 A.2d 438 (Pa. Cmwlth.1999); *Rossi v. Workmen's Comp. Appeal Bd. (City of Hazelton),* 164 Pa. Cmwlth. 233, 642 A.2d 1153 (1994).

■■■ "[C]ompliance with the provisions of Section 306(b)(3) is a threshold burden which must be met in order to obtain a modification or suspension of Claimant's benefits." *Summit Trailer Sales,* 795 A.2d at 1088. However, Section 306(b)(3) is expressly limited to modifications sought upon the receipt of medical evidence. Here, Employer sought modification not on the basis of medical evidence, but on the basis of surveillance evidence and expert vocational expert testimony.

■■■ The clear purpose of Section 306(b)(3) is to require the employer to share new medical information about a claimant's physical capacity to work and its possible impact on existing benefits. Where, as here, a claimant determines his own physical capacity without new medical information, formal notice to him does not advance the purpose of employer disclosure. Moreover, under these circumstances the claimant enjoys a superior position to control timely notice.

Based on the express language of the statute and on the clear purpose of the provision, we hold Section 306(b)(3) inapplicable here. Thus, there is no error in the Board's determination that it is unnecessary to give a "notice of ability to return to work" to a person found actually performing work.

As to Claimant's second assertion, Section 306(b)(2) provides:

Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth.... *If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe.* In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by an expert approved by the department and selected by the insurer.

---

**6.** The use of imputed earning power here is analogous to the distinct but related application of that doctrine in support cases. *See Isralsky v. Isralsky,* 824 A.2d 1178 (Pa.Super.2003) (where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity); *MacKinley v. Messerschmidt,* 814 A.2d 680 (Pa.Super.2002)(a parent who chooses not to take advantage of income available to her is nevertheless deemed to have the capacity for such earnings, which are then included in her income available for support).

77 P.S. 512(2)(emphasis added). Claimant asserts the emphasized language requires an employer to prove the unavailability of an internal position within a claimant's restrictions when petitioning for any modification.

■■■ To support a modification of compensation benefits, the evidence must show that a claimant's "disability has ended or has been reduced and that work is available to the claimant and the claimant is capable of doing such work." *Celio v. Workmen's Compensation Appeal Board (Canonsburg General Hospital)*, 109 Pa. Cmwlth. 442, 531 A.2d 552, 553 (1987). In *Allied Prods. & Servs. v. Workers' Comp. Appeal Bd. (Click)*, 823 A.2d 284 (2002) this Court explained:

Act 57 [Section 306(b)(2)] altered an employer's burden of proof in modification proceedings. There is no longer a requirement that it establish the existence of actual job referrals; instead, an employer must only show that the claimant is able to perform his previous work or that he can engage in any other "substantial gainful employment" in his employment area.

*Allied Prod.*, 823 A.2d at 287. "Thus, in order to prevail in seeking a modification of benefits, an employer must *either:* (1) offer to a claimant a specific job that it has available, which the claimant is capable of performing, *or* (2) establish "earning power" through expert opinion evidence...." *S. Hills Health Sys. v. Workers' Comp.*

*Appeal Bd. (Kiefer)*, 806 A.2d 962 (Pa.Cmwlth.2002)(emphasis added).

■■■ Neither the express language of Section 306(b)(2) nor the cases decided under it require proof of the absence of specific jobs with employer as a prerequisite to expert testimony of "earning power." While the statute requires an employer to offer an available position if one exists, it does not require employer to prove the non-existence of such a position. Nor does the statute preclude a claimant from proving the existence of such a position as a defense to modification.

■■■ However, we need not decide whether existence of a specific, available position with an employer is part of its burden in other modification circumstances. Rather, we hold that where a claimant unilaterally demonstrates residual productive skill, an employer need not address existence of positions it may have as part of its case-in-chief. As previously mentioned, a claimant is always free to inquire into this area as a defense to modification.

Claimant also argues the decision was not supported by substantial evidence. Specifically, he challenges reliance on Vocational Expert's testimony based on flawed calculations of a shoe shiner's hourly wage.[7]

Vocational Expert used statistics from the Department of Labor to calculate a shoe shiner's wage. He placed shoe shiner in a category with 36 other jobs and calcu-

**7.** Claimant also asserts the WCJ erred in relying on Vocational Expert's testimony because he was not an expert approved by the department. In support, he cites Section 306(b)(2) which provides that "[i]n order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview *by an expert approved by the department* and selected by the insurer." 77 P.S. 512 (emphasis added). Vocational Expert neither performed, nor requested, a vo-

cational interview; rather, his testimony was limited to providing an opinion on the earning power of a shoe shiner in Philadelphia. Accordingly, the approval requirement of Section 306(b)(2) is not applicable. Further, our Supreme Court recently held that prior Department approval of a vocational expert is not required. *Caso v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 576 Pa. 287, 839 A.2d 219 (2003).

lated the local average hourly wage for that category. Claimant asserts Vocational Expert's approach was flawed because the category including shoe shiners also includes positions requiring greater skill and receiving higher wages. He argues this resulted in an unrealistically high wage for shoe shiners. Claimant suggests the Vocational Expert should utilize the median wage for the category rather than the average wage.

Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Macomber v. Workers Comp. Appeal Bd. (Penske Transp. Servs.)*, 837 A.2d 1283 (Pa.Cmwlth.2003). In performing a substantial evidence analysis, this Court views the evidence in a light most favorable to the party who prevailed before the factfinder. *Hoffmaster v. Workers' Compensation Appeal Bd. (Senco Products)*, 721 A.2d 1152 (Pa.Cmwlth.1998). We are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party. *Id.*

■ It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. *Id.* It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. *Id.* In addition, it is solely for the WCJ to determine what weight to give evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.*

The decision is supported by substantial evidence. Vocational Expert unequivocally opined the hourly wage of a Philadelphia shoe shiner is $9.93. R.R. at 64. The

accuracy of a calculation utilized by Vocational Expert goes to weight of his testimony, a matter exclusively in the province of the factfinder. *Id.*

## II.

■ Employer argues the WCJ erred by not granting a credit for the overpayment of compensation benefits from the date Claimant began working at the shoe shine shop.

■ While the Act permits an employer to apply to the Supersedeas Fund to recover compensation erroneously overpaid to a claimant, *see* Section 443 of the Act, 77 P.S. § 999, an employer may recoup overpayments directly from a claimant to prevent unjust enrichment. *See Lucey v. Workmen's Comp. Appeal Bd. (Vy–Cal Plastics PMA Group)*, 557 Pa. 272, 732 A.2d 1201 (1999); *Powell v. Workers' Comp. Appeal Bd. (Community Dialysis Center)*, 789 A.2d 866, 870 (Pa.Cmwlth. 2002)("an employer may recover overpayments directly from the claimant in order to prevent unjust enrichment rather than seeking reimbursement from the Supersedeas Fund"); *Kiebler v. Workers' Comp. Appeal Bd. (Specialty Tire of Am.)*, 738 A.2d 510 (Pa.Cmwlth.1999); *Fahringer, McCarty & Grey, Inc. v. Workers' Comp. Appeal Bd. (Green)*, 107 Pa.Cmwlth. 597, 529 A.2d 56 (1987)(based on principles of unjust enrichment an employer who pursues his right to credit with clean hands, must also be entitled to restitution).

■ Unjust enrichment occurs when a person has and retains money or benefits, which in justice and equity belong to another. Black's Law Dictionary 1535 (6th Ed 1990). Claimant testified that he worked at the shoe shine shop without receipt of pay or gratuities.[8] As there was

8. Claimant testified that although he received gratuities he did not keep them, instead depositing them into the cash register. R.R. at 44.

no evidence Claimant received any compensation, there was no unjust enrichment. The Board did not err in determining that Employer was not entitled to a credit.

Accordingly, the Board's order is affirmed.

### *ORDER*

AND NOW, this 18th day of May, 2004, the decision of the Workers' Compensation Appeal Board is AFFIRMED.