**Judy SMITH, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (Caring Companions, Inc. and Uninsured Employers Guaranty Fund), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 10, 2012.

Decided Sept. 17, 2012.

Lester Krasno, Pottsville, for petitioner.

James L. Welsh, III, Murrysville, for respondent Caring Companions, Inc.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Judy Smith (Claimant) petitions this Court for review of the Workers' Compensation Appeal Board's (Board) February 24, 2012 order affirming the Workers' Compensation Judge's (WCJ) decision granting the claim petitions filed against Caring Companions, Inc. (Employer) and Uninsured Employers · Guaranty Fund (UEGF), and modifying Claimant's benefits as of April 16, 2009. The sole issue before this Court is whether the WCJ erred when it modified Claimant's benefits. We affirm.

Claimant began working for Employer in 2006 as a home health aide. On October 29, 2008, while working for Employer at a client's home, Claimant fell while attempting to prevent the client from falling. Immediately after the accident, Claimant experienced burning in her back. She reported the incident to Employer and attempted to continue working. Employer told Claimant that it would report the incident and she should wait to be contacted. Claimant was seen in the Pottsville Hospital emergency room on that same evening. Thereafter, the hospital contacted Claimant for her workers' compensation claim numbers. As a result, Claimant again contacted Employer to follow up. On the date of the accident, Employer did not have workers' compensation coverage.

On October 31, 2008, Claimant was examined by Joseph E. Albert, D.O. (Dr. Albert). Claimant's chief complaints were neck and back pain. She also complained of having head cold symptoms for several days, and dizziness upon turning her head since the accident. In an October 31, 2008 Injury Care Report (Report), Dr. Albert noted that Claimant was experiencing "[s]inusitis with secondary labyrinthitis— non work related" and "[c]ervical thoracic sprain strain, rule out disc protrusion."

Reproduced Record (R.R.) at 191a. The Report also stated, "I suspect that most of her headache and dizziness are from her sinus infection. . . . She should remain off work until she is cleared by her family physician regarding the sinus infection, then make a follow[-]up appointment with her worker's [sic] compensation panel provider." R.R. at 191a.

On or about November 3, 2008, Claimant was examined by her family physician, Anita Kolzlowski, M.D. (Dr. Kolzlowski). Dr. Kolzlowski provided Claimant with a note which was given to Employer, excusing her from work for a two-week period ending November 17, 2008. It is unknown if the note removed Claimant from work due to her sinusitis, or the cervical thoracic sprain strain.

Claimant's average weekly wage was $400.43 per week (based upon a 40 hour week at $9.50 per hour) with a resulting potential compensation rate for total disability of $360.38 per week. Beginning on or about October 29, 2008 and continuing through August 31, 2009, Employer sent Claimant bi-weekly checks based upon her gross wages of approximately $361.00 per week, representing approximately thirty-eight hours per week at $9.50 per hour.[1] Although the amount paid to Claimant approximated her potential compensation rate, Employer deducted taxes from the gross wages thus resulting in payment of an amount less than that Claimant would have received had she been paid total tax-free disability benefits under workers' compensation.

On December 5, 2008, Claimant filed a claim petition seeking workers' compensation benefits from Employer alleging the occurrence of a work-related injury on October 29, 2008. The claim petition sought ongoing total disability benefits as well as payment of medical bills, and sought counsel fees pursuant to the Workers' Compensation Act (Act).[2] Claimant also filed a penalty petition alleging that Employer failed to accept or deny the claim within 21 days. On January 26, 2009, Claimant filed a claim petition seeking workers' compensation benefits from UEGF.

On or about December 14, 2008, Claimant received a job offer letter for a light-duty position in Employer's Reading, Pennsylvania office. Although the letter outlined job duties and stated that the position would pay the same rate of $9.50 per hour, the letter did not indicate the number of hours per week. Claimant did not return to work. On or about January 11, 2009, Claimant received a Notice of Ability to Return to Work form (Notice), dated January 8, 2009, which stated:

> You have provided no medical evidence that you are disabled as the result of your work injury on October 29, 2008. The attached [Report] indicates that you should remain off work until you are cleared to return to work by your family physician for a non-work-related sinus infection. See also offer of employment sent to you and your attorney on December 12, 2008.

R.R. at 189a.

On February 2, 2009, at the suggestion of Claimant's counsel, Claimant was examined by Robert W. Mauthe, M.D. (Dr. Mauthe).[3] Claimant complained to Dr.

---

1. The WCJ concluded that Employer made these payments in an attempt "to 'mitigate' possible damages for its failure to have insurance and its failure to issue a Notice of Compensation Payable or a Notice of Denial." R.R. at 248a.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

3. Dr. Mauthe treated Claimant in 2004 for an injury involving Claimant's thoracic and lumbar spine.

Mauthe of pain from head to toe. She complained of numbness in her head, pain in her upper back in the thoracic area and pain in her buttocks. Dr. Mauthe determined that the pain in her upper back was pre-existing, and unrelated to the 2008 work accident. Further, Dr. Mauthe determined that Claimant had "absolutely no neurologic findings." R.R. at 212a. Dr. Mauthe concluded that her upper and lower body pain was consistent with a fibromyalgia-type syndrome. Further, it appeared to Dr. Mauthe "that [Claimant] did suffer a sprain/strain of the cervical, thoracic, and lumbar area, superimposed upon her prior thoracic disc herniation and preexisting non-work-related fibromyalgia as a result of [the 2008 accident]." R.R. at 213a. Dr. Mauthe released Claimant to permanent light-duty work.

On April 16, 2009, Claimant received a letter, wherein, Employer again offered her a light-duty office assistant position, paying $9.50 an hour for 40 hours per week (April 2009 job offer). The letter contained a list of job responsibilities, and explained that the position was within the restrictions imposed by Dr. Mauthe on February 2, 2009. Claimant did not return to work.

Following several hearings, on April 23, 2010, the WCJ granted Claimant's petitions, but denied her penalty petition. The WCJ found that Claimant had met her burden of establishing a work-related injury on October 29, 2008 involving a cervical, thoracic and lumbar sprain/strain, and that Claimant was entitled to total disability benefits for the period from November 3 through November 17, 2008, and from February 2 to April 16, 2009. The WCJ concluded that Claimant failed to meet her burden of establishing that she is entitled to any benefits for the period between November 18, 2008 and February 2, 2009. The WCJ found that Employer's December 12, 2008 job offer referenced in the January 8, 2009 Notice was not a "good faith" job offer because it did not state whether it was a full or part-time position. Finally, the WCJ determined that Employer was entitled to modification of Claimant's benefits as of April 16, 2009, because the April 2009 job offer was a "good faith" job offer to which Claimant did not respond.

Claimant appealed to the Board, asserting that the WCJ erred by granting a modification of benefits when Employer failed to promptly provide her with a Notice in connection with the April 2009 job offer. Specifically, Claimant argued that Employer's Notice was sent prior to Dr. Mauthe's February 2009 examination and that since the April 2009 job offer was based upon that examination, Employer was required to send another Notice specifically referencing the examination. By order dated February 24, 2012, the Board affirmed the WCJ's determination. The Board rejected Claimant's contention that Employer's failure to send a new Notice rendered the April 2009 job offer ineffective. Claimant appealed to this Court.[4]

Claimant maintains that the Board erred when it found that an additional Notice was not required, and affirmed the WCJ. We disagree. Initially, we recognize that Section 306(b)(3) of the Act states:

> If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer

4. "This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed." *World Kitchen, Inc. v. Workers' Comp. Appeal Bd. (Rideout),* 981 A.2d 342, 346 n. 5 (Pa.Cmwlth.2009).

must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:

(i) The nature of the employe's physical condition or change of condition.

(ii) That the employe has an obligation to look for available employment.

(iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.

(iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

Section 306(b)(3) of the Act, added by the Act of June 24, 1996, P.L. 350, *as amended,* 77 P.S. § 512(3).

The claimant in *Ashman v. Workers' Compensation Appeal Board (Help Mates, Inc. & State Workers' Insurance Fund),* 989 A.2d 57 (Pa.Cmwlth.2010) asserted the same argument as Claimant in the instant case, "that the issuance of a 'Notice of Ability to Return to Work' is a threshold burden for a modification of a claimant's benefits and because Employer failed to offer any evidence that it met this burden, the WCJ's modification of her benefits was improper." *Id.,* 989 A.2d at 62. The claimant in *Ashman,* like Claimant herein, possessed medical evidence as to her ability to work. "However, upon being released to sedentary duty by the panel physician, [Ashman] returned to work beginning on July 5, 2006, in the absence of such notice and continued performing light duty work through August 22, 2006." *Id.* This Court held:

> The purpose of the notice requirement is to require the employer to share new medical information about a claimant's physical capacity to work and its possible impact on existing benefits. And, formal notice is not required where a claimant is actually performing work. *Burrell v. Workers' Compensation Appeal Board (Philadelphia Gas Works),* 849 A.2d 1282 (Pa.Cmwlth.2004). Claimant acknowledged that she returned to work performing sedentary duty and was physically capable of working in that capacity. Furthermore, testimony provided by Dr. Morgan, Dr. McClellan and Dr. Burke suggested that the Claimant's restrictions remained fairly consistent for this period of approximately seven weeks. Therefore, requiring Employer to issue a 'Notice of Ability to Return to Work' for minor changes in Claimant's restrictions would be superfluous considering she was working. *See Burrell.*

*Id.*

Similarly, in *Burrell v. Workers' Compensation Appeal Board (Philadelphia Gas Works and CompServices, Inc.),* 849 A.2d 1282 (Pa.Cmwlth.2004), this Court held that Notice was not necessary where an employer had knowledge that the claimant was working part-time at another job. This Court stated, "[w]here ... a claimant determines his own physical capacity without new medical information, formal notice to him does not advance the purpose of employer disclosure. Moreover, **under these circumstances the claimant enjoys a superior position to control timely notice.**" *Id.,* 849 A.2d at 1286 (emphasis added).

In the instant matter, on February 2, 2009, Claimant's own physician determined that Claimant was capable of performing light-duty work. At the March 11, 2009 hearing, Claimant's counsel admitted to receiving Dr. Mauthe's report and forwarding it to Employer's counsel. R.R. at 75a.

Section 306(b)(3) requires that Notice must be issued, "[i]f the insurer receives medical evidence that the claimant is able

to return to work in any capacity. . . ." 77 P.S. § 512(3). Here, Employer received the new medical information from Claimant herself. To mandate Employer to provide Claimant Notice when it was Claimant herself who furnished Employer the information in no way serves the purpose of the notice requirement or Claimant's obligation to return to work. In reliance upon *Ashman* and *Burrell,* this Court upholds a practicable application of the law, especially "under these circumstances [where] the claimant enjoys a superior position to control timely notice." *Id.,* 849 A.2d at 1286. We affirm the Board's conclusion that the purpose of Section 306(b)(3) of the Act had already been achieved without the need for additional notification when Claimant's own physician, the source of the medical evidence, informed Claimant that she was capable of returning to light-duty work.

For all of the above reasons, the Board's order is affirmed.

### ORDER

AND NOW, this 17th day of September, 2012, the Workers' Compensation Appeal Board's February 24, 2012 order is affirmed.