# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Always Moving, LLC and  :
State Workers' Insurance Fund  :
Petitioners  :
  :
v.  :  No. 1183 C.D. 2016
  :  Submitted: January 20, 2017
Workers' Compensation Appeal  :
Board (Sutton),  :
Respondent  :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**    **FILED: April 20, 2017**

Always Moving, LLC (Company) and its workers' compensation insurer, State Workers' Insurance Fund (collectively, Company) petition for review of an order of the Workers' Compensation Appeal Board (Board) reversing an order of a Workers' Compensation Judge (WCJ) denying Darieal Sutton's (Claimant) claim petition on the basis that he was an independent contractor rather than an employee. The Board ultimately determined that at the time Claimant sustained a right foot injury, while moving voting machines in November 2011, he was an employee acting within the course of his employment with Company. Company contends the Board erred in determining Claimant was an employee rather than an independent contractor at the time of his injury. In particular, Company argues the Board exceeded its limits of review by selectively disregarding the WCJ's findings of fact. For the reasons that follow, we affirm.

## I. Background

The WCJ found the following pertinent facts. Company is a generic moving company that performs commercial and residential moves. Ninety percent of Company's work is commercial moving performed for Graebel Van Lines. When performing work for Graebel, Company is a subcontractor. Company also performs evictions and relocations for the Philadelphia Housing Authority.

Company is owned by Ernie Cimadamore (Owner) and his wife. When Company has work, Owner will call a number of workers whom he considers subcontractors. To that end, Owner asked the workers to incorporate on their own because he could not afford workers' compensation insurance. If Graebel Van Lines booked the work, the workers wore Graebel uniforms. If Company booked the work, the workers wore Company uniforms. Owner is not an on-site supervisor. Further, Owner does not appoint supervisors or otherwise tell the workers what to do or how to practice their trade.

Owner also testified he did not interview Claimant prior to the time he began working. Rather, Claimant's brother, Ephram Ingram (Ingram), brought him to the job and Claimant began working. Claimant worked approximately 30 hours per week for Company, and he earned $15.00 per hour.

In addition to its usual moving jobs, Company had an agreement with the City of Philadelphia (City) to move voting machines to and from the City's polling stations. The voting machine job would usually last for approximately three weeks and involved 685 to 700 machines. They would be delivered in time

2

for the elections and then returned afterward to the City warehouse. Company usually rented four trucks for the voting machine job, with a driver and one helper per truck.

Owner entered into an agreement with Claimant, a helper, wherein Owner would pay Claimant approximately $5,000 for each voting machine job. Claimant performed this duty on previous occasions. Company did not require Claimant to wear any type of uniform while performing the voting machine work.

Owner was not involved in the day-to-day work of the voting machine job. However, he would check in every couple of days to make sure the machines were okay. Owner did not go out on the trucks and did not direct Claimant on how to move the voting machines.

On November 3, 2011, while on the voting machine job, Claimant injured his right ankle when he stepped down off a truck onto an unpaved area abutting the pavement. He heard a loud snap and felt immediate pain. Thereafter, Claimant advised Owner that he needed to get someone to that location to finish the day's schedule.

Byron Richardson, a coworker of Claimant, and driver of the truck on which Claimant worked, drove Claimant to Temple University Hospital where he underwent X-rays and received an Ace bandage and crutches. Claimant did not return to work.

3

On November 9, 2011, six days after the injury, Claimant began treating with Dr. Labbad, who put Claimant in a cast. Dr. Labbad also ordered X-rays, and an MRI, prescription medication and crutches. Claimant continued to see Dr. Labbad once a week.

In December 2011, Claimant filed a claim petition alleging that, on November 3, 2011, he sustained work injuries in the nature of a "[s]tress fracture of the right foot … [rule/out] torn ligaments in right foot." Reproduced Record (R.R.) at 1a. Company filed an answer denying Claimant's material allegations, including the allegation that Claimant was an employee at the time of the injury.

Following several hearings at which the parties submitted evidence, including medical evidence, the WCJ found Claimant established he sustained a work injury to his right foot and ankle when he stepped off a truck while performing the voting machine job. To that end, the WCJ accepted the testimony of Claimant's primary treating physician, Dr. Michael R. McCoy, M.D. (Claimant's Physician), who is board-certified in family medicine. In particular, the WCJ found:

> 3. [Claimant's Physician] examined Claimant and began treating him. He recommended physical therapy and diagnosed, as of his [June 2012] deposition testimony, right foot strain and sprain, right foot stress fracture with right sesamoid fragmentation, right Lisfranc injury and a right ankle strain and sprain with AFTL tear. [Claimant's Physician] attributed these diagnoses to the November 3, 2011 work injury. He advised Claimant could not return to his pre-injury position. He did not believe Claimant retains the capacity for work of any kind as of his testimony.

4

* * * *

> 9. Based upon a review of the evidentiary record as a whole, this Judge finds Claimant's testimony credible to establish he was injured as he described on the date he described moving voting machines for [Company]. This Judge finds Claimant's testimony also credible to establish he cannot work as a result of his injury. The medical evidence in this case confirms Claimant's testimony, and the testimony of [Owner] does not disagree with Claimant's testimony in any factually material way. This Judge accepts the testimony of Owner as credible.

WCJ's Op., 4/1/13, Finding of Fact (F.F.) Nos. 3, 9 (emphasis added).

Nonetheless, the WCJ concluded Claimant's status was that of an independent contractor rather than an employee at the time he sustained his work injuries. In Conclusion of Law No. 1, the WCJ stated:

> Based upon the factual evidence presented, this Judge concludes Claimant was an independent contractor when his injury occurred. Claimant was paid by the job, not by the hour, Claimant arranged his duties with the entity directing him to move the voting boxes rather than [Company], and Claimant had the option of refusing work for [Company], which he had done. Not persuasive to this Judge is [Owner's] assertion that he advised his workers to incorporate so he could save money by not paying for workers' compensation insurance. Such an arrangement is not relevant to a determination of whether the parties are involved in an employer-employee relationship. The most important factor in determining whether one is an employee of an entity is whether the purported employer has the ability to exercise control over the manner in which the purported employee performs the job duties. The only real evidence on this issue was during the deposition of [Owner], he was asked whether, hypothetically, if the City called to complain

5

about the way the job was being performed, would he intervene, and he responded affirmatively. There was no indication as to the nature of any possible intervention. <u>Without more, this Judge cannot conclude that Claimant established that Owner had the ability to control the manner in which he performed the task of moving the voting booths.</u> Claimant's Claim Petition must be denied and dismissed.

WCJ's Op., Conclusion of Law (C.L.) No. 1 (emphasis added).

Consequently, the WCJ circulated a decision denying Claimant's claim petition on the basis that he was an independent contractor, not an employee. Claimant appealed.

On appeal, the Board observed that Claimant bore the burden of proving all the elements necessary to support an award. <u>Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)</u>, 634 A.2d 592 (Pa. 1993). This included establishing the existence of an employer-employee relationship. <u>Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)</u>, 762 A.2d 328 (Pa. 2000). Although there is no bright-line rule to determine the existence of an employment relationship, certain established guidelines and various factors must be taken into consideration. <u>Hammermill Paper Co. v. Rust Eng'g Co.</u>, 243 A.2d 389 (Pa. 1968). These factors include: control of the manner in which the work is done; whether the individual is responsible for results only; the terms of the agreement between the parties; the nature of the work or occupation; the skill required for performance; whether the individual is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by time or by the job; whether the work is part of the regular business of the putative employer; and,

6

whether the putative employer has the right to terminate the relationship at any time. Id.

In determining whether an individual is an employee or an independent contractor, the primary factor to be considered is whether the putative employer has the right to control either the work to be done or the manner in which it is performed. Universal Am-Can. It is the existence of the right to control that is most significant, regardless of whether that control is actually exercised. Id.

In reviewing the evidence, the Board noted the existence of conflicting testimony from Owner and Claimant over the issue of whether someone supervised Claimant while he performed his duties. See Bd. Op., 9/16/14, at 6. Claimant testified that while on a Company job where there were multiple employees, Ingram would give the employees instructions regarding performance of the job. See Notes of Testimony (N.T.), 2/6/12, at 16; R.R. at 87a. If they were moving an office, Ingram would give them directions as to what floor to start and what items to move. Id. If there were any changes that needed to be made, Ingram would direct them. Id.

Conversely, Owner testified that even if he had 20 guys on a job, he would not designate anyone to be in charge. See WCJ Op., 4/1/13, F.F. No. 2(s); Dep. of Ernie Cimadamore, 6/19/12 (Cimadamore Dep.), at 26; R.R. at 157a.

The Board noted the WCJ found the testimony of both Owner and Claimant credible. Recognizing that the primary factor in determining employee

7

status is whether the employer has the right to control the work and the manner in which it is to be performed, the Board remanded to the WCJ for a determination as to whether Company had the right, even if not exercised, to control the work and the manner in which it was to be performed. Bd. Op., 9/16/14 (First Bd. Op.), at 6.

On remand, the WCJ made the following dispositive findings:

> 5. With respect to the duties Claimant was performing when his injury occurred, moving the voting booths, this Judge determined the testimony of Claimant and [Owner] did not conflict in any material manner. A thorough review of the testimony of these two witnesses reveals the discrepancies noted by the Board referable to whether there was supervision during the performance of a job pertains to work Claimant was doing for [Company] on an hourly basis (Claimant earned $15.00 per hour on various moving jobs, such as moving an office, aside from the voting booth activity, which was an isolated, specific move). The specific job Claimant was performing when injured, moving the voting booths, was noted by both Claimant and [Owner], to be paid on a flat rate basis. The testimony of Claimant and [Owner] referable to the voting booth activities confirms Claimant could perform these activities at his discretion as long as the work was completed in the appropriate three week timeframe. There is no indication that [Owner] had the ability to direct Claimant concerning the manner in which the work was to be performed. This Judge cannot infer such ability. In fact the routing of the voting machines was performed by a third party. (N.T., 2/6/12 at 39). This Judge finds [Company] did not have the ability to control the manner in which moving voting booths was performed.

WCJ Remand Op., 9/28/15, F.F. No. 5 (emphasis added). Therefore, the WCJ concluded:

8

2. Based upon the evidence presented, this Judge concludes, on the merits of the matter, <u>that Claimant was an independent contractor referable to his activities of moving the voting booths. [Company] had no ability to control the work to be completed or the manner in which the voting booth activities were performed</u>. Claimant failed to meet his burden of proving he was an employee of [Company].

Remand Op., C.L. No. 2 (emphasis added).

On appeal, the Board determined the WCJ erred in concluding that Claimant was an independent contractor rather than an employee. Bd. Op., 6/23/16 (Second Bd. Op.), at 7. To that end, the Board determined Company controlled Claimant's work to the extent it established an employer-employee relationship. <u>Id.</u> In reaching this decision, the Board noted Owner would contact Claimant the day before a job and instruct him as to what his work schedule would be for that day. Company required Claimant to be at the worksite at a specific time, and he could not leave until a specific time, even if he completed the work. Graebel Van Lines supplied the majority of the Company's work and always had an on-site supervisor. <u>Id.</u> The Board also noted Company paid Claimant by the hour at a set hourly rate. <u>Id.</u>

Summarizing its analysis, the Board stated:

In addition to the primary control factor, other factors all weigh in favor of Claimant being an employee of [Company]. [Hammermill Paper]. First, Claimant was not responsible only for results, as he was paid on an hourly basis and had set hours he was expected to work, whether or not the job was completed. Second, the agreement between Claimant and [Company] was of an hourly worker with a set hourly pay and schedule. Third,

9

the nature of the work was an unskilled mover and Claimant had no distinct moving business outside of working for [Company]. Fourth, [Company] supplied Claimant the truck to use at all jobs. Fifth, payment was almost always done on an hourly basis, not by the job. Lastly, moving was [Company's] entire business, as they were specifically a moving company. All these factors, in addition to [Company's] right to control Claimant's work, show there was an employer-employee relationship between [Company] and Claimant as contemplated under the [Workers' Compensation Act].[1]

Second Bd. Op. at 8 (footnote added).

The Board also rejected the WCJ's decision to distinguish Claimant's work during the voting machine job from his regular hourly work for Company. Although Company paid Claimant a flat rate for the voting machine job, and Company had less discretion over Claimant's work activities, the Board did not find this sufficient to support a determination that Claimant was an independent contractor. Id. To that end, the Board reasoned that a determination of whether an employment relationship existed must be based on a collection of factors reflecting the entire relationship. Second Bd. Op. at 8-9. Therefore, the Board observed, Claimant's specific activities in performing the voting machine job are relevant to, but not dispositive of a determination as to whether Claimant is an employee or an independent contractor. Id.

For the above reasons, the Board ultimately concluded Claimant was a Company employee rather than an independent contractor. Second Bd. Op. at 9.

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2708.

10

Recognizing the WCJ accepted Claimant's testimony and medical evidence related to the occurrence of a work injury, the Board determined Claimant sustained a work-related injury described as a "right foot strain and sprain, and right ankle strain and sprain with ATFL tear." Id. The Board also noted the WCJ's finding that Claimant could not return to work because of his injury. Id. Consequently, the Board reversed the WCJ's denial of Claimant's claim petition and held that Claimant was entitled to both wage loss and medical benefits from the date of his injury. Id. Employer petitions for review.[2]

## II. Discussion

### A. Argument

Company contends the Board erred in determining Claimant was an employee rather than an independent contractor. Essentially, Company asserts the WCJ properly determined Claimant functioned as an independent contractor while performing the voting machine job regardless of whether Claimant functioned as an hourly employee for Company while performing other moving work. Company further asserts the Board exceeded its standard of review by disregarding the WCJ's findings of fact which were supported by substantial evidence and indicated Claimant worked as an independent contractor while performing the voting machine job.

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

11

Company argues it had a completely different agreement with Claimant for the voting machine job. Company paid Claimant a lump sum for the entire job rather than at an hourly rate for work performed; Claimant was responsible for paying his own taxes. This form of payment fell completely outside the scope of Claimant's typical arrangement. Claimant also had complete control over how to perform the voting booth job. Claimant determined the route of the truck and the order in which the machines would be delivered. Claimant set his own hours and determined when his work day would start and end. Claimant also had the freedom to hire a crew to help him complete the job.

Most importantly, Company asserts Claimant failed to present any evidence that Owner maintained a level of control during the voting machine job sufficient to establish an employment relationship. Owner never accompanied Claimant on the voting machine job. In fact, Owner did not know the truck route used for the job. In other words, Owner did not control Claimant's performance of the voting machine job.

Company further argues that if the Board's decision stands, it would improperly establish a policy of "once an employee, always an employee." Pet'r's Br. at 16. As such, Company argues, it would be impossible for an employer to renegotiate the terms of a working relationship. To that end, Company asserts there is no case law indicating a claimant could be an employee in one capacity and have a different type of working relationship in another. In short, the Board's rationale does not leave any room for an employment relationship to change and grow.

Therefore, Company contends the Board erred in disregarding the WCJ findings in her remand decision that Claimant had complete discretion as to how to perform the voting machine job, and that Company had no ability to control the manner in which Claimant performed that work. See Remand Op., F.F. No. 5. Because these findings were supported by the evidence, Company argues the Board exceeded its standard of review by selectively disregarding the WCJ's critical findings of fact. See Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan), 612 A.2d 434 (Pa. 1992) (WCJ's findings of fact are binding on appeal if supported by substantial competent evidence; it is not the Board's role to reweigh the evidence). Further, it is irrelevant whether the record contains evidence supporting findings other than those made by the WCJ. Burrell v. Workers' Comp. Appeal Bd. (Phila. Gas Works), 849 A.2d 1282 (Pa. Cmwlth. 2004). The critical inquiry is whether the record contains evidence supporting the findings actually made. Id.

Therefore, Company contends the Board erred in determining Claimant was an employee while performing the voting machine job based on factors related solely to his other moving work where Company paid him hourly and exercised greater control over the manner in which Claimant performed his work. In short, while performing commercial and residential moves for Company, Claimant was an employee. However, Claimant's relationship with Company significantly changed when he performed the voting machine job. To that end, Company asserts there is no evidence supporting a finding that Owner had control over Claimant while he performed that job. Thus, Company asks that we reverse

13

the Board's order and hold that Claimant worked as an independent contractor while performing the voting machine job.  Universal Am-Can; Hammermill Paper.

## B. Analysis

## 1. Applicable Law

To begin, we recognize that a claimant's employment status is a critical threshold determination for liability under the Workers' Compensation Act. Am. Road Lines v. Workers' Comp. Appeal Bd. (Royal), 39 A.3d 603 (Pa. Cmwlth. 2012).  A claimant must establish an employment relationship to receive benefits.  Id.  The existence of an employment relationship is a question of law to be determined based on the facts in each case.  Id.

A determination as to whether a claimant is an employee or independent contractor may be based on many factors.  Id.  These include (1) control of manner the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment.  Id.  The most relevant criteria are control of the manner of the work to be done, responsibility for the result, and the nature of the occupation.  Id.  However, none of the factors are dispositive.  Id.

Nonetheless, the key factors in establishing an employer-employee relationship are the employer's right to control the work to be done and the manner

14

in which the work is performed. Universal Am-Can; Am. Road Lines. In short, control in an employment relationship exists where the alleged employer: possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and, the power to control the employee. Am. Road Lines. Payment of wages and payroll deductions are significant, as is provision of workers' compensation coverage. Id. However, the method of payment is not determinative. Id.

Applying the law to the facts of this case, we reach the same conclusion as the Board, albeit for slightly different reasons, that the record indicates Claimant functioned as a Company employee not only in his regular moving work for Company, but also while performing the voting machine job.

## 2. Hourly Work

First, as the Board determined and the WCJ apparently conceded in her remand opinion, the record contains sufficient indicia of an employment relationship between Company and Claimant regarding Claimant's regular hourly work for Company. With the exception of the voting machine job, Company paid Claimant on an hourly basis. N.T., 2/6/12, at 34; R.R. at 105a. Claimant was expected to stay for the duration of the day, regardless of whether the work was finished. N.T., 2/6/12, at 35; R.R. at 106a. Ingram, Claimant's brother, acted as the "unspoken supervisor or the number one person at [Company]." Id. Company provided Claimant with uniforms to wear with either a Graebel Van Lines or Company insignia. N.T., 2/6/12, at 40; R.R. at 111a. Because Company work

15

usually involved residential moving, Company required that Claimant wear its insignia for that work. N.T., 2/6/12, at 41; R.R. at 112a.

Claimant further testified that 90 percent of Company's commercial moving was for Graebel Van Lines. Id. Nonetheless, only Company paid Claimant. N.T., 2/6/12, at 43; R.R. at 114a. Specifically, Claimant testified (with emphasis added):

> Whatever hours I that worked were always paid by [Company], so I never received a secondary payment or a check … from another company. All my checks and all my hours were always billed or scheduled, listed and paid put through [Company].

Id. Claimant further testified he did not perform any other moving work than what he did for Company. N.T., 2/6/12, at 43-44; R.R. at 114a-15a. He would not take any "outside jobs." Id. Given these circumstances, we conclude Claimant established an employer-employee relationship for the hourly work he performed for Company. Universal Am-Can; Am. Road Lines.

### 3. Voting Machine Job

In applying the law specifically to the voting machine work Company offered Claimant, we reach the same result. Although Company paid Claimant for the voting machine work with a single flat rate or lump sum payment, Claimant testified that Company rented the truck for the job and hired Byron Richardson, a usual coworker, as the driver. See N.T., 2/6/12, at 38-39; R.R. at 109a-10a. In particular, Claimant testified "In general, Byron and I were scheduled to work together. As far as the routing of the machines, that was done by a third party."

16

N.T., 2/6/12, at 39; R.R. at 110a (emphasis added). Claimant further testified that whoever ran the voting machines "set the schedule for however many machines were designated for a specific place, the arrangement of who's first; second, et cetera, et cetera." Id. (emphasis added).

In Baum v. Workers' Compensation Appeal Board (Hitchcock), 721 A.2d 402 (Pa. Cmwlth. 1998), we addressed a somewhat similar situation where the claimant, alleging an employment relationship, established Baum, the putative employer, supplied the truck and fuel the claimant used to perform the work, which involved the pick-up of saw dust. Unlike the present case, however, Baum also instructed the claimant on how to load the trucks and chose the specific routes. Nevertheless, akin to the present case, the claimant worked solely for Baum and nobody else. Because Baum controlled the claimant's performance of his duties and the business contracts, we determined the claimant was an employee rather than an independent contractor.

Further, in Sarver Towing Co. v. Workers' Compensation Appeal Board (Bowser), 736 A.2d 61 (Pa. Cmwlth. 1999), we determined a claimant who operated a tow truck for a towing company essentially on a commission basis established an employment relationship where the company provided him with a company tow truck, and the tools and materials needed to perform the job. In Sarver, the company permitted the claimant to keep the truck at home, and it did not exercise control over the routes the claimant could take or directly supervise him as he towed vehicles. Nevertheless, we reasoned the company did exercise substantial control over the manner in which the claimant performed his work.

17

The claimant could not use the truck for any other work and remained on-call 24 hours a day. In addition, the company could take back its equipment at any time.

Here, Owner testified the City contracted with Company for the voting machine job, which is a big contract. Cimadamore Dep. at 18; R.R. at 149a. Claimant was not a party to the contract. Id. Owner testified Company supplied rental trucks and the fuel for the job. Cimadamore Dep. at 16; R.R. at 147a. Owner testified Claimant, a helper who had no driver's license, was one of four driver/helper pairs performing the voting machine work. Cimadamore Dep. at 9; R.R. at 140a. Company had the same agreement with the drivers as it did with the helpers. Cimadamore Dep. at 15-16; R.R. at 146a-47a.

Although Owner did not directly supervise Claimant on-site, he would talk with him every couple of days to see how they were doing and check if the machines were okay. Cimadamore Dep. at 10; R.R. at 141a. If the City would have called to complain about the performance of the voting machine job, Owner would have intervened. Cimadamore Dep. at 18; R.R. at 149a.

Further, Claimant testified he called Owner when he sustained his injury during the morning of November 3, 2011. N.T., 2/6/12, at 7; R.R. at 78a. Owner testified Claimant "worked only four days into the delivery portion" of the voting machine job. Cimadamore Dep. at 15; R.R. at 146a. Owner then "hired" someone to finish the job. Id.

In light of these circumstances, we must agree with the Board that Claimant continued to work as an employee for Company while performing the voting machine job. As discussed above, in determining whether an individual is an employee or an independent contractor, the primary factor to be considered is whether the putative employer has the right to control either the work to be done or the manner in which it is performed. Universal Am-Can; Am. Road Lines. It is the existence of the right to control that is most significant, regardless of whether that control is actually exercised. Universal Am-Can; Am. Road Lines.

Here, the WCJ found both Claimant's and Owner's testimony credible. Contrary to the WCJ's findings, Owner testified Company had the authority to intervene in Claimant's performance of the voting machine job if the City complained about the performance of the work. This factor is critical in deciding whether an employer has control over the manner in which the claimant performs the work. Universal Am-Can; Am. Road Lines. Although Owner exerted very little supervision over Claimant while performing the voting machine job, this resulted more from a lack of need than a lack of capacity because Claimant had prior experience performing the voting machine job. Sarver. Owner also demonstrated the ability to hire another individual to replace Claimant and finish the job.

Given the totality of the circumstances here, we see no error in the Board's order determining, as a matter of law, that Claimant met his burden of establishing an employer-employee relationship not only while performing hourly work, but also while performing the voting machine job. Universal Am-Can; Am.

19

<u>Road Lines</u>. Accordingly, we affirm the Board's order awarding Claimant benefits from the date of his work injury based on his average weekly wage of $755.64. <u>See</u> Second Bd. Op. at 9-10; Bd. Order, 6/23/16.


                                           _____

                                           ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Always Moving, LLC and             :
State Workers' Insurance Fund     :
                  Petitioners     :
                              :
              v.               :     No. 1183 C.D. 2016
                              :
Workers' Compensation Appeal   :
Board (Sutton),                 :
                  Respondent   :

## O R D E R

**AND NOW**, this 20th day of April, 2017, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge
